Okay, our next case this morning is number 172597, Princeton Digital Image Corporation v. Office Depot. Okay, Ms. Elliott. Good morning. May I please report? My name is Tiara Elliott with Lakeland Watkins on behalf of the intervener appellant, Adobe Inc. Undoubtedly, there are numerous issues raised and briefed by the parties on this appeal. However, there are three key observations together with the law that we submit compel reversal and remand in this case. The first is the damages rule that is your court practice below. Could we talk about appealability in respect to that because I have some concerns about that under the Microsoft case and some of the circuit decisions following Microsoft, not all of which are referred to in the brief. It strikes me that there's a pretty good argument that this falls within the Microsoft rule. It's not a class action issue to be sure, but later circuit cases have extended Microsoft to situations bearing a fair resemblance to this where there's a voluntary dismissal because the dismissing party thinks that it can't win based on the record that it's allowed to make. And so, it seems to me that there may not be jurisdiction over that aspect of the case. I'd like you to address that. I'd like you to address a second question and that is, suppose we were to decide that there is no appellate jurisdiction over the tortious interference claim, does that have any significance about the argument with respect to the attorney's fees on the patent claim and with respect to the cross appeal? And it strikes me that Microsoft did not intend to say that other aspects of the case couldn't be brought up on appeal just because there was a voluntary dismissal that tainted the one claim. Okay. That's a long way of saying it. You get the point. I do, Your Honor, and I appreciate the point. Microsoft v. Baker dealt with particularly the class action context, which Your Honor has recognized and which we briefed. The issue there dealt with specifically the public policy around Rule 23 and the gamesmanship that the court saw and recognized and the way that that could be abused in that particular setting and under those circumstances. Critically though, the issue there, which is distinguished from ours here, is that there was not finality. When a denial of a class certification is ruled upon by the district court, it doesn't end the action for that particular plaintiff. Here there's no doubt that there's finality. The district court's legal rulings regarding the type of damages Adobe could recover rendered Adobe unable to establish an element of its breach of contract claim under New Jersey law. That terminated... Can I ask you about that? The district court said the opposite. The district court said you can actually establish damages. You may not think it's worthwhile, but the district court said you can establish damages. The other thing I guess I want to ask you about, you sought an injunction. You don't need to establish damages to seek an injunction. How is it that... Those are the two points. We have a long line of cases and there are lots of other similar cases that say when a district court decides a particular issue against the plaintiff and the plaintiff says, we now concede a factual question. That means we do not have liability to a claim construction. The accused products under that claim construction don't fit or that there's some legal implication eliminating the liability, but we don't seem to have that and the district court didn't think we had that. We seem to have... You just don't think it's worth proceeding and therefore you're confessing judgment because you don't think it's worthwhile. We would disagree and I would submit to your honor two things. First, Princeton Digital raised first at the morning of trial how analogous this situation was to a claim construction decision that rendered an infringement or non-infringement position. They're wrong about that. We have a jurisdictional question. We're not bound by what you say or what they say. The judge said you can prove damages. The judge also said you seek an injunction. The judge said you can prove some measure of purely defensive damages. Sorry, that's at most, that's all that liability requires and if you're seeking an injunction, I'm not sure liability even requires that. Well, there's numerous cases, your honor, that stand for the proposition that the parties nor the district court need to pursue through trial on an issue where the parties have, at least one party in this case, both parties stipulated a judgment and the court agreed to in order to expedite review and there are several cases that stand for it. There's a Sixth Circuit case, the Bogart v. Eli Lilly case that said, that approved a solicitation of the dismissal which was designed to expedite review of an order that in effect dismissed the complaint. Same way in the Raceway Properties case, the Impris, that's another Sixth Circuit case. The in effect seems to me to have a couple of different possible meanings. One is the kind of meaning that we've given to it in the claim construction situation where once there's a claim construction ruling, the plaintiff can actually admit a factual question that would then determine no liability. I don't see that that has happened here and I'm not sure whether that has happened in most of the cases that you've relied on. There was in fact a factual admission here. The court... There wasn't a factual... Let's put aside the injunction for a moment. If there'd been a determination here that there was no entitlement to damage or even nominal damages, that might fall within these cases. But the problem is that there is no such fact here because the district court said you could prove some amount of defensive damages. There's no ruling that you couldn't prove some amount of defensive damages. So it's a choice that you made to say, well, that's not worth the candle. Let's just get a judgment against this and appeal. And my reading of Microsoft in the later cases is that you can't do that. We would disagree, Your Honor. First, the court clearly crafted the rule and did so under the threat of sanctions for noncompliance. And this is all in the transcript from the first day and last day of trial that he could grant Princeton Digital's summary judgment motion, which said that we had no damages either. And that you hadn't proven your damages. I'm sorry? That you hadn't proven your damages. Or that the theory you put forward was not limited to offensive damages, right? The position Adobe took and maintains is that the damages in pursuit of its breach of contract claim was inextricably intertwined and inseparable from its defense of its customers and its assertion of a license defense. That has been its position throughout the case. And Adobe submitted cases, particularly the safeguard case that has been cited numerous times in my other courts, for the same proposition that fees that are inextricably intertwined are defensive in nature. And that's the situation we had here. But every time Adobe sought to comply with the district court's orders, and they were permissible for recovery, the district court came back iteratively and said, that's not defensive either. That's not defensive either. To the point of the last day. But they did prove it at the same time. The district court, at the end of the day, said, you may be able to prove some defensive damages. I'm not going to prohibit you from showing that at the trial, right? And the district court then said that only purely defensive. Only purely defensive. Correct. And the record reflects there are no purely defensive damages to prove. So there's obvious inconsistency on both the record and the facts that make the district court's judgment call, or at least opinion in that regard, not justifiable. And in this particular case, Princeton Digital agreed. This was a stipulation and agreed that there were no damages. And their agreement is in the record. It's at least on appendix 3592, Princeton acknowledged that Adobe had no damages to prove. Moreover, in the 11th circuit. What did you say? 3592? 3592, Your Honor. In Southland Farms, the civics. Which volume is that in? 3. Volume 3, Your Honor. In Southland Farms. What is the language that you're relying on, page 3592? Okay. This is a brief submitted by the appellee here. Yes. So this is Princeton Digital's brief. It's one of its four summary judgment motions to the district court, where, in fact, it asked the court to grant summary judgment. And in its position, it says that Adobe has no damages. Well, so what? I mean, the district court didn't grant the summary judgment motion. Except for it attains its decision at the end, on the last day of trial, when it articulated its further clarified rule that only purely defensive damages could be recovered. It says that he could grant the Princeton Digital's summary judgment motion, which actually asked for that. But he didn't? Yeah, but his decision in terms of articulating a rule of law that's not supported by the case law. There's no New Jersey case that stands for the proposition that only purely defensive fees are recoverable, and that fees that are inextricably intertwined, both affirmative and defensive fees, are not recoverable. There is no case that stands for that proposition. The facts remain, and this is what Adobe admitted, that there are no purely defensive fees. There are no fees that are distinguishable, such that they were in pursuit of a defense, a license defense, while at the same time, not affirmative in terms of a breach of contract. They were inseparable in terms of Adobe's role as an intervener. They're two sides of the same coin. It looks like colleagues have other questions. You had another question on the jurisdictional issue? Yeah, I was interested, actually, in your second question. Suppose we concluded that there's not a final judgment here in full or in part. What happens? Two sides to that, Your Honor. I want to at least point out the 11th Circuit case in Southland Farms. There, after the court ruled that a disclaimer of liability for consequential damages applied to plaintiffs states that the time and expense of trial could not be justified by the claim of compensatory damages alone. And the district court, on that representation, entered a final judgment with the consent of all parties, just like here, and dismissed the action. And the 11th Circuit found jurisdiction in that circumstance. As to the specific question, Your Honor. I assume that's pre-Baker. It's a 1990 case. Well, pre-Baker, yeah. And it's an 11th Circuit case. And there's a number of other cases, 6th Circuit cases, a number of cases post-Baker, that also acknowledge that when the parties stipulate to expedite review of a decision, a legal decision here, such as the case we have here, to expedite review, that that is appealable. There is finality in this case. But none of those cases involves a situation like this, where you've elected to enter a voluntary dismissal because you don't like the chances of establishing an element of the case, rather than the court ruling against you on that element. We would respectfully submit that's not the circumstance in which we dismissed. We dismissed because the facts were that there were no purely defensive damages. That was an admitted fact. And under James, where the court sent back a case, this court sent back a case for clarity about the decision the district court made, that could likewise be appropriate here. Let's move on to the others. I just want to ask you about the claim to the injunction. Could we go back to that for a minute? Has your client given up the claim to an injunction? I'm not sure what you mean by giving up the claim for an injunction. Do you still have an injunction claim? I mean, setting damages aside, is there still a claim for an injunction? There is a claim for declaratory judgment that the licensed offenses precluded these cases from being filed. There's also a pending claim for a breach of contract and acknowledging that the licensed offense would prevail. I'm not sure exactly what you're pointing to in terms of... There's a footnote, I think, in one of Judge Stark's opinions, I think having something to do with restitution in which he, I don't have the page number, I'm sorry, in which he expressly says you seek an injunction and that's a reason why he's not going to do something else. Do you seek injunction or have you permanently waived any right to an injunction? The answer to which may well affect whether the ruling on damages actually undermines liability. I guess part of what I'm confused with the question is because the restitution claim was dismissed, that's not, and so that's not been briefed by either party here because restitution... Am I not remembering correctly that Judge Stark said you seek an injunction on your breach of contract claim to prevent Princeton from filing more lawsuits in breach of the covenant not to sue? I'm not questioning your work on that, John. I just don't know where you're signing that because the restitution, you're signing that with restitution and that claim was dismissed. What about on page 3207 where you're seeking an injunction? I'll just point while I'm going there that the cases with the exception of two pending in the District of Delaware, the cases about which you're seeking fees and seeking recovery of damages were dismissed. So on my 3207, that looks to be a complaint. Right. So I'm not sure, Your Honor, Judge Stark... Is this your complaint? Or this is... Does she have to order in joining Princeton from suing or maintaining suit against other Adobe customers and end users based on their use of Adobe licensed products? Are you still seeking that? Well, the cases in which Adobe has intervened has been dismissed. So we're not a party to any case right now that would give us standing to... This sounds as though you're asking for injunction against the filing of future suits. Your Honor, the cases in which Adobe presently has standing and that it has intervened in... Are you saying that you're seeking an injunction or not? If you're not, just say no or not. So I guess, Your Honor, the fact that the patent is expired, there can be no new suits filed. The suits that have been dismissed are opposed. So what you're saying is that any request for injunction is moot? It's moot. Okay. Let's turn to the other question. Okay. And that is, if we were to conclude hypothetically that the tortious interference claim can't be brought up on appeal because of the Microsoft line of cases, what is the impact of that on your appeal with respect to attorney's fees and with respect to the cross-fee? The appeal for fees and the appeal with respect to the waiver of privilege was joined under the court's merger doctrine and they're final. And our view is that the issue on the breach of contract for breach of the covenant to sue also is final. With respect to the court's views below in terms of what we could approve, there's nothing left for the court to do. That satisfies this court's final judgment rule and that satisfies finality here. So our submission is that all three issues are right for this court to review on appeal, but most certainly the fee issues have been merged with the others and independently offer jurisdiction for this court to review. Under those decisions that we cited in our brief, this court can review all three. And with respect to... The question is whether we can review the two if we don't have jurisdiction over the other one. I don't know of any cases that have addressed that issue. Well, certainly there's nothing left for the court to do. That's what we look at when we analyze under the final judgment rule. So those decisions have been decided and there's nothing left for the district court to do. So they are right and they are final. I think this falls squarely within this court's jurisdiction. And the final judgment that this court, the district court, signed off on and submitted was that all, and that's on 107 and 108 to the appendix, all of the decisions that were interlocutory in nature were ready and subject to review by this court, and that's our submission. Okay. Let's talk about the attorney's fees issue. Yes. As I read the record, Judge Stork, this is a two-step process. Step one, he's going to determine whether it's an exceptional case, and step two, he's going to decide in the exercises his discretion not to award attorney's fees. I don't think you accurately described the second decision as based on efficiency alone, but let's put that aside for a moment. We have cases before octane which say that it is a two-step process. And my first question is, after octane, is it really a two-step process? That is a determination of exceptional case and then the exercise of discretion to award attorney's fees, or should it really be viewed as a one-step process involving the totality of the circumstances and just a the exceptional case determination which automatically leans to an award of attorney's fees? And I don't see that we've addressed that question yet after octane. And there is a difference between the pre-octane cases and the situation we're addressing now because our pre-octane cases didn't apply a totality of the circumstances standard to the exceptional case findings, so it made sense to have a two-step procedure. But I'm not sure now that it makes sense to view this as a two-step procedure since both the first step and the second step are applying the same standard. That's kind of long-winded. Do you understand what I'm saying? I think I do follow, Your Honor, and I would submit that the octane case itself and the case of post-octane don't really make clear whether the process is one or two steps. But I would also submit to you that the outcome would be the same under either circumstance here. The court determined, and it's not disputed here on appeal, that the conduct here is exceptional. It is undisputed. The Princeton Digital District... I'm sorry. I think Judge Stark said the case was exceptional, and that included a number of reasons, some of which had to do with their conduct and some of which had to do with your conduct. I think when you look at the district court's opinion and the totality of its opinion, it is critical of Princeton Digital's conduct and delineates at great length the conduct which it found unacceptable or less than desirable. As for Adobe's conduct, Your Honor, the district court opined that Adobe litigated aggressively. Well, wait, wait. In your view, is this a two-step process or a one-step process? I think having found the case to be exceptional, the conduct here warranted fees to Adobe. No, but that's not answering my question. Is it a one-step or a two-step process? I think under octane that the first step is to determine whether or not the case is exceptional. And so that would be a two-step process. Okay, so it's a two-step process. We know the first step, exceptional case determination, it's totality of the circumstances. What then is the judge, the standard at the second step? What standard governs whether to award fees once you've determined that the case is exceptional? Well, if we look at this court's decision in OPLIS, this court looked at a district court's determination that a case was exceptional and then looked at the court's denial of fees after that finding. And in OPLIS, this court found that the court did not provide a justification as to why the case did not warrant a fee to the party who moved for fees. And I think OPLIS is instructive here. OPLIS did not conflate the analysis into one step, nor did it disturb the finding of exceptional conduct. It said exceptional conduct was determined here, and it was the same case here, and there was no rationale for denying fees in that case, and this court reversed and remanded. Isn't there a rationale provided? We respectfully disagree. You disagree with the rationale. Well, the rationale was that Adobe was aggressive, and that's a very subjective opinion. That's not accurate. That is only one part of what the district court said. And you keep saying that that was the entire basis for his decision, and that's not correct. Well, the court, in saying that we were aggressive, cited the things about which we were aggressive. No, but you're not addressing my point. Aggressiveness was only one part of his decision not to award fees. He went on and relied on a number of other factors as well. It's all on Appendix 41, Your Honor. The whole rationale about the court's discretion as to whether to award fees is on page 36 and 37 of his opinion. And if he analyzes octane fitness, that is on page 37 of the lower court's opinion on Appendix 41. Look, he says at the top of the page on 41, he says, you litigated this aggressively, and that has some relationship to compensation and deterrence. But then, you know, at the bottom of the – in the middle and the bottom of the page, he gives other reasons. It's not his only reason. Well, he explains that he was aggressive, but he explains that we were aggressive by intervening. He explains that we were aggressive by asking for – He says there is no singular category of conduct that rises to a level that would warrant deterrence by way of an award of attorney's fees. Right. That's going beyond aggressiveness. That's to Princeton Digital's conduct, Your Honor. That's to Adobe's conduct. It is in the first full paragraph on Appendix 41. And he's saying that we were aggressive in shooting by intervening. The only step that Adobe could take to honor its contract it had with its But we might not even get to this issue, right, if we rely on Judge Stark's finding that you are not the prevailing party, right? Well, Judge Stark did not find that we weren't the prevailing party. He didn't make a decision. In fact, he assumed for purposes of the decision that we were the prevailing party, and, in fact, we are the prevailing party as it relates to these underlying cases because they were all dismissed with prejudice. Didn't he assume? He said, I'm going to find that you're not the prevailing party. That's on page 25 and 26. And then he says, but I'm going to go ahead and presume for a minute that you are the prevailing party and address this exceptionality, right? That's how I'm reading it. Tell me how I'm wrong. I didn't read the initial part as you did, Your Honor. I read what he said. He's assuming for purposes of this decision that Adobe is the prevailing party. So I'm not sure where Your Honor's citing that he said we weren't the prevailing party. But under the law, the prevailing party looked at two things. Was there some relief on the merits? And did that relief change the relationship, a material change in the legal relationship that affected and modified the behavior of one party vis-a-vis the other? There's no doubt whatsoever that Princeton Digital was not the prevailing party here. They filed infringements. Now, wait, wait. This wouldn't be for us. If we were to agree with you that he abused his discretion in not awarding fees based on the grounds that he gave, we would still have to send this back for a prevailing party determination, right? You could, Your Honor. But the decision as to whether a party is prevailing is an issue of law. This court could decide that issue de novo.  And Adobe is the prevailing party on the infringement suit in which Adobe intervened and that those parties were dismissed. They were dismissed with prejudice, without any consideration. And that is the relief that Adobe sought. That is precisely the relief that Adobe sought. Dismissal of these people. Can I just check something? All nine of these were without consideration. I thought there was some record that maybe at least in one, maybe more than one, some of the sued defendants did pay something. Maybe not these nine? I understand your question, Your Honor. Not these nine. These nine were all dismissed after receiving declarations that these defendants were using Adobe products, which is exactly the same thing that Princeton Digital was told by both the defendants and Adobe, that they were all licensed when these cases were filed. Yet they maintained suit for years, even after their own expert told them in December of 2014 that the conduct they accused was covered by the Adobe license. The expert complained and sent them an email in December of 2014 saying, these are Adobe products. These must be dismissed. And even after getting that information, they violated Rule 11. In terms of reviewing Judge Stark's opinion with respect to his decision not to award fees, we have to look at what he said. And what he said on page 41 is not just that Adobe was aggressive. He also made quite a number of comments about PDIC's conduct as not warranting fees. And so we have a decision which, contrary to your argument, does not rest entirely on Adobe's aggressivity. But the result relies on a number of factors. What factor has he left out, in your view, in making that decision? Your Honor, we submit that the conduct that the court has tagged to Adobe that was labeled aggressive, but the specific conduct was intervening, moving for sanctions, filing motions, which was the responsibility. You're saying he made an improper finding that you'd acted aggressively? It was an abuse of discretion. It was an improper, it was error in the assessment of the evidence. Let's put that aside. So he goes into these other factors. He doesn't rest just on aggressive conduct. What has he left out? What has he not considered that he should have considered? He actually considers quite thoroughly, in our view, the conduct that prolonged the case, that multiplied the proceedings, that caused Adobe to have to move and react. He does that repeatedly, starting from pages 26. Basically, at 41, he's saying their conduct isn't so bad that I'm going to award attorney's fees, right? Correct. Okay, so what's wrong with that? We're saying that it is an error in the assessment of the evidence. It is against the weight of the evidence. It is internally contradictory. It is just like this case's decision in Oblis. So it's not that he applied a wrong standard. It's that the findings that he made aren't supported by the record. Correct, Your Honor. And same with Rule 11. He actually finds the facts that support a Rule 11 violation, which the rule requires shall be sanctioned. It's not even discretionary. When a party does not, an attorney does not make an independent investigation, on this record, he fully acknowledges, even asks for a judicial counsel again on the record, I have nothing more than Mr. Marsh's declaration. And the answer to that is correct. And though he held and so found that there was no independent investigation, he still excused that conduct in violation of Rule 11. He disregarded the improper purpose for which these cases were filed, and which was demonstrated by the explosive letters that were sent seeking nuisance value settlements, which this court, again, has acknowledged as indicia of an improper purpose. So under both Rule 11 and separately under Section 285, Adobe submits that there was an abuse of discretion by not granting fees. Your Honor, I know I'm out of time, but I would love to have some time for rebuttal if Your Honor would permit. Okay. We'll give you two minutes for rebuttal. Thank you. Mr. Pizzuniac, is that how you pronounce it? Yes, correct. Thank you, Your Honor. If it may please the Court, George Pizzuniac, for appellee cross-appellant Vincent Digital, Corporation 8, addressing the jurisdictional issues first. This is a case just like the third-circuit case in Kamesi and in Microsoft v. Baker. There was an interlocutory in limine decision limiting the nature of the damages that Adobe could present at trial. You used the word in limine, which, in trying to understand the messy body of case law, did come up a number of times. I did not take this to be in limine. That is, the district court said, I hereby exclude all the evidence of damages that falls into a particular category, namely damages in the form of costs of defending against Princeton's claims against the actual defendants, not the intervener, that also overlap with what has been called affirmative costs. And that evidence is not going to come in. I'm not reserving that for later change during the trial proceeding. This did not strike me as in limine. Well, perhaps I view in limine as simply a name for limiting the amount, limiting the evidence that's allowed to be presented. The cases that I read, at least I understood them to use in limine in a particular sense, namely this could change at trial. And I didn't see any evidence that this ruling could change at trial. Indeed, it's a little hard to do suddenly when you say Mr. Becker or Dr. Becker can't come here. It's a lot easier if you say he can come and I may restrict. Well, it's still a decision that could be changed at any time during the trial because it was not a final decision. There's also a limit. Let's assume we reject that. Let's assume we reject that. Let's assume that Judge Stark meant these to be final rulings about what evidence could be brought in. It's still a limitation as to what damages could be presented. But not a complete bar. It's not a complete bar. Why isn't it a complete bar? I mean, if Adobe is in the best position to know what evidence it could present and whether it could actually show these kinds of damages, why are you basing your statement that it wasn't limiting Adobe to zero? What is your basis for that? There's two different answers. One is that if, in fact, Adobe was defending the customers, then there should be some record of that, some financial ability to demonstrate that, yes, we spent this money. What if they didn't do that, though? What if they didn't keep those kinds of records? I mean, they're in the best position to know whether they did or didn't, right? Well, if Adobe did not keep adequate records to present the damage case, that's their problem, not the problem of the court or PBIC. Well, but it doesn't mean that it's not a final decision. I mean, the question is whether there's jurisdiction for an appeal right now. And the answer is there's a second answer, and that is, as we pointed out in our red brief at page 26, the established New Jersey law is that if you prove a breach of contract, the law infers damages, and you're entitled to at least nominal damages. Therefore, under the Baker case, under the Comense case, there was a case that Adobe was bound to present, and that is to go into the court, present the best case it could on liability. If they proved liability, they would have been entitled to at least nominal damages. That's the law. And, in fact, as the court pointed out, they could probably have presented other things. The main point is, what happens now? Suppose Adobe consented or actually requested a final judgment. That final judgment is now the law of, is res judicata. You have plain preclusion. Oh, wait. What is your position about whether the non-appealability of the tortious interference claim extends to the claim for attorney's fees under 285 and Rule 11, et cetera, and to your cross-appeal? Do you agree that even if there is no appellate jurisdiction over the tortious interference claim, that we still have jurisdiction over the other claims? Over Section 285 and Rule 11? I believe that an appeal lies from a final judgment. And that final judgment subsumes all the other interlocutory. Yeah, but what's the answer to my question? Well, I was getting to that. Because the final judgment subsumes all the interlocutory decisions, once the court dismisses an appeal, then the entire appeal fails. I guess I was expecting you to talk about either 1292 or 54B. So there's a claim in the case called patent infringement and fees under 285 about the patent infringement case. And then there's a counterclaim of breach of contract, which is, I think, the only counterclaim left in the case. Their breach of contract counterclaim, have I got that right? No, Your Honor. PBIC filed a claim for patent infringement against these various defendants. Adobe intervened and filed a complaint for breach of contract. And patent misuse is gone. So what's left is the counterclaim of breach of contract. But it's not a counterclaim. It's a claim by Adobe. OK, so there are two claims. Rule 54 addresses the question of two claims. If we thought that there was no final judgment on the breach of contract claim, then don't you have to go through a 54B process in order to get the patent judgment up here? There are. Adobe did not appeal from the patent, any patent issues. The only appeal. 285. It appeals from the denial of attorney's fees. Yes, but it appealed from that as part of the appeal from the final judgment. So you're suggesting we don't have any jurisdiction over the 285 appeal? I believe that, Your Honor, it does not have a jurisdiction. But aren't there plenty of cases saying that attorney's fees determinations are separate from the merits and can be separately appealed? That is correct. And perhaps that is the answer, as Your Honor has previously pointed out. There is no jurisdiction, no cases deciding that jurisdictional issue. There is, in this case, those decisions were made already before the final judgment. The appeal from the final judgment specifically cited all of these interlocutory decisions. And therefore, even though it would have been possible for Adobe to go and ask for attorney's fees after this, in fact, they had done that before the case terminated. So that decision was subsumed in the final judgment. And that final judgment is now on appeal. And if that appeal is dismissed, there shouldn't be anything else that the court should rule on. Including your cross-appeal. No, our cross-appeal is different because the basis for the Comessi and the Microsoft rulings was that the appellant should not be able to rig the system to have a- Well, if there's no final judgment, why is the cross-appeal? There is a final judgment, except the court does not have jurisdiction to hear that final judgment because there is insufficient finality. The cases here where you have- I don't see how you can distinguish your cross-appeal from the attorney's fees. The 285 or something. Well, the PBIC is entitled to have this court consider the assessment. Well, maybe you have to go through a 54B certification to get it up here. If we have to go through a 54B certification, then I guess we have to do that. But I think that the way the Microsoft or the Baker decision came out, and this is apparent if one reads the concurrent opinion in that case by Justice Thomas, the court put an overlay over Section 291 that basically said, even though there is a final judgment, it's not an appealable final judgment because we're not going to accept finality that's basically a rigged finality to- But there's no rigged finality as to the 285 claim, right? As I said- Or with respect to your cross-appeal, there's no rigged finality. It's either one of those, isn't it? There is no- As to our cross-appeal, there is no rigged finality. As to Section 285 and Rule 11, yes, Your Honor, I agree. There's nothing rigged about those decisions were decided. My only comment is that if, in fact, those decisions were rendered before the final judgment and subsumed in the final judgment and the appellant's appeal from that final judgment is dismissed, then everything is dismissed. Can I just ask you, have you thought about how the new Supreme Court decision in Baker relates to the old Supreme Court decision in Procter & Gamble, which was a rigged finality, more or less, openly and expressly, where the government says, we're not going to provide grand jury testimony and please judge right in your order that if we don't supply it, your antitrust case, your whole antitrust case is dismissed. And the Supreme Court said, that's a perfectly fine way to bring a case up, at least when the alternative is going into contempt. And Baker, whatever else it is, is ultimately about Rule 23, but it has language that is, let's call it skeptical about various forms of voluntary action to produce finality that might not otherwise exist. Your Honor, and if I may respectfully disagree with your underlying supposition that the Microsoft v. Baker is a Rule 23 case, that is where it originated. However, both Messe and Microsoft v. Baker, although they were class certification Rule 23 cases, if you read the decisions, the decisions do not rest on the fact that these were class certifications. They rest on the fact that these were interlocutory decisions that just as in this case, a plaintiff loses the class certification, it now becomes financially beneficial to continue the case because there's not enough money involved, so they say, fine, because we can't make any money on this, we're not going to go through liability, we're just going to ask the court to dismiss the cases. And that's exactly here. Both to Messe and Microsoft v. Baker, they do deal with the interlocutory nature. Rule 23, for example, Rule 23 in general, they were simply analyzed are these interlocutory decisions, and they were. The subsequent decisions of the Second, Fourth, and Sixth Circuit cases have taken the Baker case beyond class certifications into other areas, and if you look at, for example, the Keene case in the Fourth Circuit, they very clearly say Microsoft v. Baker is an interlocutory decision. To answer the honors question more directly, it's kind of hard to speculate as to what exactly the court would do, but the court basically followed this prior Cooper's-Lybrand decision, which is that we want the entire case, including liability, damages, any counterclaims, all the issues to come up at once for very good, solid public policy, judicial policy reasons. What do you make of Proctor and Gamble, then? Frankly, I have to apologize, but I can't address the Proctor-Gamble case. I can't address the Cooper's-Lybrand case and the others, but there are situations where a court decision, for example, we talk about claim construction. The district court renders a claim construction that makes it impossible for a patentee to actually present the case. How is that different from Microsoft v. Baker? I mean, I guess, imagine a scenario where it might be a judgment call on whether they could prove their case or not. There may be some grayish area, but I've been involved in these things, and in fact, I... I don't know that anybody's raised Microsoft v. Baker in these things. Yeah, but at least in the District of Delaware, if you want to have a final judgment based on claim construction that's appealable, you actually have to present an order to the court that details why that claim construction ruling is essentially a summary judgment of non-infringement. You can't... And that becomes... That's part of the order. That's part of the order that's taken out of appeal. And it's not enough to say, I can't prove my infringement case under that claim construction. Yeah, it's never that simple. You have to... Every order that we have been... I have been involved in, and I think is generally true, all of those orders actually detail why the claim construction is essentially a summary judgment of non-infringement. And if you have summary judgment of non-infringement, then, no, you cannot... You cannot appeal. I'm sorry, you can't proceed with the case. There's nothing to present to the jury. In this case, Adobe had the full opportunity to present its case on liability. If there was no liability, because there was no breach of contract, then, of course, we wouldn't have to worry about all of these damage issues. On the other hand, if the court, if the jury, determined that there was a breach, they would have been entitled to at least nominal damages, even if they couldn't prove anything. It is only then that you have final decision, the final determination, that can be appealed. Anything other than that, all we're talking about is the amount of damages... I think we're dealing over the same ground that we went over before. Let's move on. Your Honor, to address your issue, specifically, if Your Honor decides that 285 and Rule 11 still should be decided, we still have the issue of whether or not Adobe for 285 is the prevailing party. I understand, but let's talk about his decision where he assumed that Adobe was the prevailing party and then said, this is an exceptional case, and then he said, but I'm still not going to award attorney's fees. And how is it that that's possible? What additional findings does a district court have to make in determining whether to award fees once the court has determined that it's an exceptional case? I believe the way the court looked at it is that the exceptional case had a different meaning than I believe perhaps Your Honor places the meaning of exceptional case. The court specifically determined whether PBIC acted in bad faith and determined that we did not. Wait, wait, he made an exceptional case determination. But again, it's perhaps that this report was an error in finding exceptional case if the exceptional case has the connotation that Your Honor does. Let's put that aside. Let's assume he made an exceptional case determination. When a court makes an exceptional case determination under 285, what are the standards for determining whether attorney's fees should be awarded thereafter? Your Honor asked if this is a singular question or a two-part question. The district court looked upon this as a two-part question and the determination of exceptional case simply meant this case is different from the rest. To award attorney's fees under the Octane case, there has to be something. Do I remember Octane said something like that? Yes. Exceptional just means very far outside the mine run. I think my recollection is Chief Judge Stark said this is outside the mine run for a mix of reasons, some of which have to do with your conduct and some of which have to do with the complexity and the intervention that aren't particularly focused on blameworthiness. That's correct. That's the whole point is that the court viewed exceptional case, the whole matter, as a two-step process. First, as stated in Octane, you decide, is this a little bit different? Well, a little bit different doesn't mean you're entitled to attorney's fees. I don't read him as saying, is this a little bit different from other cases? I read him as saying there was sufficient culpability on behalf of your client to make this an exceptional case within the Octane standard. I'm sorry, Your Honor. Again, I have to respect that. Well, then show me where, what your basis is for saying that he wasn't applying the Octane standard here. He was, and when the court, and we detailed this, I think, in our brief, because we... No, show me where he says that this is just, you know, this is an unusually interesting case or something. I read it as saying that there was culpability sufficient to make it an exceptional case. Am I wrong about that? He even cites Octane Fitness in the midst of the discussion. I'm sorry, Your Honor. He even cites Octane Fitness in the midst of this discussion on pages A40 and 41. I'm sorry, Your Honor. I'm a little bit at a, because I'm trying to find exactly where the court addressed the Octane Fitness. It's pages A39, A40, and A41. And at the bottom of page APX39, he says, under the totality of circumstances and analysis, the court finds that these cases do stand out from the rest in comparison to the full panoply of patent cases with which the undersigned has been involved. I guess what I was remembering is the full paragraph on page 40. Yeah. That's what I took to be for the following mix of things, not due to the lack of merit of PDIC's case, nor due to bad faith litigation, but due to a combination. And then he enumerates some things about the weakness of your case and some things about the, that are, the complexity. And then he says the overall balance leads him to conclude that it's an exceptional case. I mean, isn't he clearly applying the Octane standard? Well, he is, but he's determining that his case stands out from the rest, is uncommon and rare. That's why it's exceptional, but... Under Octane, just because something is rare doesn't make it exceptional. There has to be some sort of culpability. Well, not the way the court looked at it. Well, I don't read it the way you do. I, as... Let's assume that he applied the Octane standard and he found sufficient culpability on the part of your client to find the case exceptional. What's he supposed to do then? He seems to say, on page 41, well, you know, it's an exceptional case, but it's not that bad. And therefore, I'm not going to award attorney's fees. Is that a fair reading of what he says on page 41? I think he said far more than that. The court did not analyze all the facts in PBIC's favor because he in fact found, he looked at the worst arguments that could be made against PBIC and determined that we did not act in bad faith. We acted in good faith. Yeah, yeah. He said it's not so bad. You didn't act in bad faith. That's right. You had a reasonable claim. So, you know, isn't he just saying, yes, it's an exceptional case under Octane, but it's not so bad that I think I ought to award attorney's fees. And the question is, is that permissible? I would have thought he would say yes. Well, the answer is yes. It has to be permissible. It has to be permissible because, again, the way Octane defines exceptional does not carry with it any implication that someone was acting in bad faith or that attorney's fees should be allowed. That's, there's no way, I don't think or at least it's potential, it's a potential reading of Octane that it is independent of bad faith, which is why perhaps yes, you can combine them or you can do them separate, but before attorney's fees are allowed, there has to be  There's no jurisdiction. There has to be a finding of bad faith? Pardon me? There has to be a finding of bad faith? Basically, yes, because I'm not What case is that? I'm not aware of Octane changing the general rule that Changed the law? Well, but it did not change the fact that attorney's fees under 285 have only, by this court, have only been allowed in cases where there has been some indication of bad faith. I'm not aware of this court ever affirming attorney's fees under section 285 where there is no no bad faith. Can we turn to the breach of contract claim? And here's what I want to begin to ask you. The breach of contract claim is you promised not to sue Adobe's customers when the accused infringement, and I'm going to summarize here, involved Adobe products. I realize that's a shorthand. You did not promise not to sue Adobe customers. That would be false to say that you did. You did, however, promise not to sue them for infringement based, I forget the language, in whole or in part, on the use of Adobe products. Okay. That, whether your suit did, whether your suit against the nine defendants here, did that would be a question for in two ways. One, it's a defense to your charge of infringement, if it were true, and it also is a breach. About as perfect an overlap as to that issue as possible. Now, what law says that in their breach of contract claim, the work that they did for that issue, namely, trying to show that you sued in violation of the covenant, you sued for infringing activity that used Adobe products as part of their recoverable breach damages? The contract says we're not going to sue anybody for using Adobe products. We never sued anyone for using an Adobe product. We sued people for encoding images on their websites that follow an infringing method. When the first issue of Adobe came up, PDIC said absolutely unequivocally nothing associated with Adobe is being charged with infringement. Adobe sent a letter to all of its customers, a letter that PDIC helped write that said unequivocally PDIC is not making any claim against any Adobe products. Adobe products' methods are all free and clear. When the customers who were sued, at least initially, went to Adobe and asked for indemnification, Adobe said we're not going to indemnify you because PDIC has already stated publicly and it's in the record that they're not suing any Adobe products. The district court concluded that New Jersey would basically follow the standard so that Adobe could properly collect as breach damages costs of work it did in showing that your infringement suit against the defendants was meritless because it violated the promise not to sue. And you don't dispute that, that they could recover that if under the Art Vale standard they could show that which includes a certain aspect of either obviousness or bad faith in bringing of the suit. And I think you do disagree with this but Judge Stark did say there was a tribal issue of fact of bad faith under the Art Vale standard as adopted by New York  And Mr. Court said but if I'm trying to get at this inextricably intertwined business which seemed ultimately to be the heart of the limitation, what is it that you think they Adobe was seeking to collect as breach damages that it can't collect as breach damages? What Adobe asked for in damages is every dollar that they had spent pursuing their claim for breach of contract against BUS. So they essentially they're asking for monetary damages against PBIC. They're expending attorney's fees to pay them and then they're saying that well our pursuit of money damages against you, you have to pay us because that is actually defensive fees. They're inextricably intertwined. Why is that wrong if all of their breach on this assumption, and maybe you're going to contest the assumption, if all of their breach work was aimed at showing that you were suing Adobe customers for activity that although you may not have known it at the time or maybe you just were reckless in not figuring it out, in fact used Adobe products, which is also a defense to the infringement claims. Because they were pursuing those attorneys fees long after we dismissed the cases against the plaintiffs. As to these nine, yes, that's true, if I remember right, somewhere near the end of July 2015 the last of these nine was dismissed and there was some that wasn't there was one case somewhere that didn't get dismissed, not one of these nine, another one, until December of 2016. And as far as I know, what Judge Stark was focused on was fees pre-January 1st of 2017. And the answer is that under New Jersey's American rule, the breach of contract attorneys fees are not reparable. So in effect, Adobe was saying, we're going to circumvent the American rule. Right, so you have two rules, right, one says if you commit a breach by suing somebody, the natural, and you do that, let's assume, in bad faith, contrary to your promise, not to sue that person, all of which the judge thought were triable issues, then, quite naturally, you get, you, Adobe, the claimant on this claim, gets the costs of defending against that infringement. Correct. At least the costs of defending against that infringement on the ground that it came from within your promise not to sue. Correct. The American rule at best says we don't entitle you to any fees for some other work, how does an entitlement get defeated by a rule of non-entitlement to something else? Because, like in any other damage case, when you have lost profits, for example, there could be profits lost from a sale of a product, and the question is, well, how much of that product is actually infringing, and what is not, and what is the appropriate measure of damages? In every one of these cases, yes, there is some line drawing that the common issue of whether your suits were within the covenant not to sue or not within the covenant not to sue, that you don't get, I'm sorry, that Adobe does not get its costs of defeating the infringement suit on that defense just because it is also seeking breach damages for that very same work. That's not how I think the judge started. I find this whole discussion very abstract because we don't have in the briefs any real discussion of what the fees are that are involved here. I guess it must be that some of those fees relate to defending the customers, but nobody has articulated what the record evidence shows about what the fees are that are in dispute here. I would think some of the fees must be for defending the customers and some of the fees must relate to proving the amount of damages that Adobe is seeking to recover here. There must be at least two separate categories of damages, but nobody tells us what it is that we're dealing with. The Adobe has never identified their attorneys' fees claims. Rather, they presented totally redacted invoices with some hours and some time but no specification of what was done. That was one of the issues that they had never done that. Put aside your records and focus just on work that you can, on the record, show Adobe did before 2017, okay? Let's cut it off there. What even category of work do you think that Adobe did before 2017 would be not work to defend against your infringement checks? The pursuit of the breach of contract damage claims, for example, the seeking of damages against PBIC unequivocally is an affirmative what the court had termed affirmative action. What reason do we have to think that before 2017, Adobe's law firms spent any time on the question of quantifying or pursuing the damages for the breach? The depositions they took of PBIC which focused on damages, the fact that they didn't have a damage expert who submitted a damage expert report in the course of the... Before 2017? Oh,  sure... Where do we find a description of the damages that Judge Stark thought were unrecoverable? What did Adobe do in    case? The court was faced with a situation where all we have essentially is... Can you identify on the record where they did this? Is there some particular place that you want to identify for us to help us understand the position? I know we... For example, there's appendix page 4265. I don't know... I think that that's the... I believe, Your Honor... An expert report. Yeah, if one takes a look... If one looks at 5745, this is what... It's not the best          think that's a good question. I don't know the exact answer. I don't know the exact answer. I      that I   So, I'm sorry, Your Honor. Exactly, Your Honor. Actually, Your Honor, the best place to look is... I'm sorry, Your Honor, right now I can't find it, but it's actually 5744. But there are task descriptions here on 5745. Yeah, and this is and it has things like entry of default and, you know, some general very high level type descriptions, but not exactly what they did. And this was the reason the court said, yes, you can Adobe if you wanted to, you could separate those claims that are defensive and those claims that are affirmative. There's nothing... So, what did they submit to the court in terms of the claim that he disallowed? I had a hard time understanding that from the brief. What's the evidence that they submitted that he said you can't present? The... They submitted something similar to 5744 and I thought it wasn't the record. That's what I was looking for. I read it at this moment. I can't identify it. But they had submitted something along the lines of 5744 and which did not  defensive fees from affirmative fees. And so the court said, look, you can present defensive fees any way you wish, but do not tell me, which is what Adobe's argument was, was that everything they did affirmatively, that is, seeking monetary damages, was, in fact, defensive in nature. All the court said is that the New Jersey American rule forbids you from claiming attorney's fees in pursuit of your breach of contract claims. So that is excluded. Do not tell me that your breach of  claims are, in fact, defensive in nature because there's no evidence of that. That's not the case. It's an end around the American rule. I have found a lot confusing, but it seems to me that those two things are not opposite. The breach of contract claim on the merits is, at its core, identical to the defense of the underlying infringements. It is also true that fees spent seeking the fees for  would not be recoverable. And to the extent Adobe said everything that we can do by way of leverage against Princeton is not recoverable. And to  Adobe said everything, including threatening you for fees and whatnot, that also would not be recoverable. I'm having a hard time. You said earlier that they were doing work on the quantification of breach damages, and they were before 2017. If they were doing that, it certainly feels like that's on the non-compensable side of the line. Show me what evidence there is, including an expert report from Becker, before 2017. And maybe the answer is it was in 2016, and we need to distinguish between December 2016 and July 2015. But as Judge Seitz said, there's a lot of abstractions here. Well, the abstractions were caused because Adobe had refused to... Forget about my abstractions. Tell me something in the record that shows they did one hour of work quantifying damages before 2017. I cannot do that because we don't have the record to be able to show that because we don't have enough information about what Adobe did because the information that was provided is insufficient to show that. One other   thought that the standard that I take Judge Stark to have articulated, which is that fees that were in the record were not sufficient to be incurred in defending against your infringement suit are nevertheless not recoverable as breach if they were also fees incurred in pursuing breach, even where they are inextricably intertwined. I think Judge Stark said, Adobe can't get those. Suppose I thought that was wrong. Is there an independent basis for that legal assertion about what happens to dual character fees? Around page 80, 82, he seems to say, I told you you had to separate. You didn't separate. I will exclude. And in addition, you, Adobe, are asserting a legal view about inextricably intertwined fees that I think is wrong. Are those independent grounds or are they... They are two independent grounds because initially, Adobe claimed every single dollar they had spent in the litigation, including, I mean, literally, every single dollar. The court then said, no, you can't get every single dollar because there are defensive fees, which, as Jan pointed out, you can't recover. And then New Jersey's American rule forbids those fees that were incurred in pursuit of your contract claims. So, separate them. Their initial expert report didn't separate them. So, the court said, get your expert to separate them. They went back and presented a second expert report that basically said every dollar through  2016 was defensive in nature. Are those expert reports in the appendix, sir? Pardon me? Are the expert reports in the appendix? At least some of them are. I believe I cited them, so I believe they are, but off the top of my head, I can't tell. I think we're way over time here. Okay. Thank you. I'm sorry, Your Honor, because I did want to address our cross-referencing. We'll take that on the briefs. Okay, Ms. Elliott, we'll give you five minutes. Thank you, Your Honor.  be brief. We work diligently to try to get Princeton digital to dismiss those cases. There's nothing in the briefs about what the fees are that you view judge Stark as disallowing, and I don't think you made a good record before him on this either. Your Honor, this is a pretty good record of what was committed, and it starts with... But you don't discuss it in your briefs, really. My recollection is the briefs really are very imprecise in general about what happened here. Wow. The rule here that set off this appeal is the assumption that these cases  separable, and I can hear in your Honor's questions whether or not they truly are separable, and this goes to the heart of our position. I didn't ask you right now whether they're separable. What I'm commenting on is your failure in your interpretation of the New Jersey rule. I do believe we'll get that now on pages 42 through 55 of our brief, but in particular we cite to the appendix 4504 and 4505, and I want to draw the Court's attention specifically to 4505, which is the heart of the discussion we're just having with my colleague here. We're in the brief with the description of what it is that was disallowed and why that particular ruling encompassed fees that were properly within the New Jersey rule. I see a lot of discussion of the facts. Am I wrong? Respectfully, yes, because the Court disallowed fees. No, no, where do you tell us in the brief? To look, Your Honor, on page 50, we discussed the cases that accounted for the Court's underlying decisions about whether or not fees were inextricably intertwined. Then we discussed on page 54, starting on the bottom of page 54, and then extending to page 55, the top of page 55, we quantified and our expert, Dr. Becker, quantified fees that were approved while Adobe's fees were still in suit. And that's what Becker's report covers. I apologize. Are you on the bottom of page 54 going on to 55 and saying this is where  We're reciting to the discussion of, in the record, where the census fees were included because the Court determined that those fees that are included   included in the census. Which site are you referring to on page 54 or 55? I'm referring to the record discussion and the record discussions are in the appendix. The point is that this brief doesn't tell us what are the fees that you claimed what they were specifically for and what was disallowed. It's all general in terms of here's what New Jersey law is. It doesn't give us the facts to back up the argument. Your Honor, the facts are  would be No, it's not a question of what the facts are. It's the question they're not in the brief. I found it very interesting    referred to is not the appendix that you referred to for sure, Your Honor, but the actual facts section of our brief, the brief, cites to a number of portions of the appendix, including specifically to the expert report of Dr. Becker. Is it in the record, appendix 4605, is a discussion that is following yet another iterative ruling of the court. So the issue is whether or not you can segregate the feeds. Can I try to be the one kind of concrete thing I guess I'm focusing on at the moment? Was there work done before 2017 on the question of quantifying your damages? Yes. Did you seek fees for that work? We sought fees, but for fees. I think my question has a yes or no answer. I'm not sure. You said in response to my previous question, there was work done before 2017 on quantifying the damages you sought in breach for the breach. And that you sought compensation for the work done in quantifying that, those damages. I don't think that those are recoverable. If they were part of your request, then there is something to separate. And we would disagree under the New Jersey opinion. Let's focus on the premise. Did you seek compensation for work done on quantifying the breach damages where the work was done before 2017? The answer is not yes or no. I would like to explain why. Because the defense of our customers were inseparable from our affirmative claim. Suppose I disagreed with that. Suppose I thought that at a certain  the work done on the side of the line prohibited by the American rule, that would be fees for the work done in the breach case, not for simply defeating the other side, which would be a walk away, you get nothing. And that's one concrete example where I think that that's not on the inextricably intertwined side of the line, unlike all the work you did in trying to show that Princeton was suing in violation of the agreement. So the work done did not have a stoppage point such that there was a tender of fees that were segregated. And that's because Adobe's only role in this case was trying to get the dismissal of its customers from these cases. So from the moment Adobe picked up the phone to answer indemnity requests, responded to letters of  and the same legal instrument that was its breach of the covenant not to sue, every action taken by Adobe and its counsel was in furtherance of getting its customers dismissed. Not the action of recovering your fees for that work. They were inextricably intertwined. It's the same force. It's the same instrument. Had Princeton Digital dismissed Adobe's customers when it said it would in July 2014? It's always the case, is it not, under your but for principle, that attorney's fees for the work would not have been incurred if the underlying wrong hadn't been committed. That doesn't place them on the side of the line of recoverable breach fees under the Art Fail Rule. Under River Edge, a New Jersey case, and under Dorothy, a New Jersey case, under Safeguard, a case that has been followed by a number of courts, do any of them involve treating as breach recoverable fees, or costs, I guess, including fees, the fees for quantifying that measure of damages? Yes. That was the Dorothy case. And I want to just, I hate to read the report, but this is important and it's at the heart of the case as your Honor pointed out earlier. It's inextricably intertwined at the heart of this case. In Dorothy, and that's at 453 A2B 1341 and 1343, the court says, this is the New Jersey Superior Court, the court says the test of recoverability of counsel fees is not whether they were generated in the same case, but rather whether they were incurred in the same case. In light of our rules and case law, which encouraged the disposition of all related issues in a single litigation, it would surely  to permit the recovery of counsel fees to turn on the existence of a separate and discreet proceeding. Your Honor, respectfully, as I may be the defendant, I am not in favor     counsel fees. I would not support the recovery of counsel fees. I would not support the recovery of counsel fees. I would not support the recovery of counsel fees. I would not support  recovery of counsel fees. I would not support the recovery of counsel fees. Thank you. I have no further comments.  you.